# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 22004**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Tayari S. VANZANT**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 28 May 2024

————————————

*Military Judge*: Colin E. Eichenberger.

*Sentence*: Sentence adjudged 14 October 2021 by SpCM convened at Holloman Air Force Base, New Mexico. Sentence entered by military judge on 4 November 2021: Reduction to E-3, restriction to the limits of Holloman Air Force Base for 30 days, and a reprimand.

*For Appellant*: Major Nicole J. Herbers, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and MASON, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge MASON joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial*, *United States* (2024 ed.) (2024 *MCM*).

JOHNSON, Chief Judge:

The military judge found Appellant guilty, in accordance with his pleas, of one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (*Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*)).[2] A special court-martial composed of officer and enlisted members sentenced Appellant to reduction to the grade of E-3; restriction to the limits of Holloman Air Force Base, New Mexico, for 60 days; and a reprimand. The convening authority reduced the period of restriction from 60 days to 30 days and provided the language of the adjudged reprimand, but took no other action on the findings or sentence. Appellant, through counsel, subsequently filed a notice of appeal to this court pursuant to Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A).

Appellant raises a single issue on appeal: whether the 18 U.S.C. § 922 firearm prohibition recorded on the first indorsements to the Statement of Trial Results (STR) and entry of judgment (EoJ) is unconstitutional as applied to Appellant. In response, the Government contends the firearm prohibition is a collateral issue beyond this court's authority to review under Article 66, UCMJ, 10 U.S.C. § 866, and moreover that the firearm prohibition was correctly annotated on the STR and EoJ in accordance with applicable regulations. In addition, the Government moved for leave to file a motion to dismiss Appellant's case on the grounds that Appellant had no right to appeal to this court under Article 66(b)(1)(A), UCMJ, and therefore this court lacks jurisdiction to review Appellant's case. We find it appropriate to address the Government's motion to dismiss together with Appellant's assignment of error in this opinion. We conclude Appellant was eligible to appeal to this court pursuant to Article 66(b)(1)(A), UCMJ, and therefore this court has jurisdiction to review his case. We further conclude the firearm prohibition is a collateral matter beyond this court's authority to review, and we affirm the findings and sentence.

## I. BACKGROUND[3]

On 24 July 2021, Appellant went to a party with a civilian friend in Las Cruces, New Mexico. At the party, Appellant was drinking beer when his friend and several other individuals "started using drugs." Appellant's friend offered

---

[2] Unless otherwise indicated, all references to the punitive articles of the UCMJ are to those as printed in the 2019 *MCM*, and all other references to the UCMJ and to the Rules for Courts-Martial (R.C.M.) are to the 2024 *MCM*.

[3] The information in the Background is based on Appellant's sworn statements to the military judge during the providency inquiry.

him cocaine and showed him how to "snort" it using a rolled-up dollar bill. Appellant inhaled two lines of cocaine.

Approximately two days later, Appellant provided a urine sample as part of a unit urinalysis sweep. Appellant's urine subsequently tested positive for the presence of the metabolite of cocaine. This conduct formed the basis for the one charge and specification of which Appellant was convicted.

## II. DISCUSSION

### A. Appellant's Eligibility to Appeal to this Court

#### 1. Additional Background

Appellant was sentenced on 14 October 2021, and—after the convening authority modified the sentence—the military judge entered the judgment on 4 November 2021. On 6 January 2022, a designated judge advocate completed a review of the record of trial pursuant to Article 65(d), UCMJ, 10 U.S.C. § 865(d) (2019 *MCM*). The judge advocate concluded the special court-martial had jurisdiction over Appellant and the offense, the charge and specification stated an offense, the sentence was within the limits prescribed as a matter of law, and the findings and sentence were "correct in law and fact."

On 6 June 2023, the Office of the Staff Judge Advocate for Nineteenth Air Force (19 AF/JA) mailed Appellant a "Notice of Right to Submit Direct Appeal to the Air Force Court of Criminal Appeals." This memorandum advised Appellant of his "right to file a direct appeal of the judgment" of his special court-martial with this court. The memorandum further advised Appellant that if he chose to appeal, his "application for appeal must be received by [this court] within 90 calendar days from the date on which [he] receive[d] this letter."[4]

On 11 August 2023, Appellant, through counsel, filed with this court a "Notice of Direct Appeal Pursuant to Article 66(b)(1)(A), UCMJ[, 10 U.S.C. § 866(b)(1)(A)]." The record of trial was delivered to this court on 28 August 2023 and docketed the following day. On 7 November 2023, the Government moved to attach to the record *inter alia* a verbatim written transcript of the court-martial proceedings, which this court granted on 16 November 2023.

---

[4] The memorandum further advised Appellant that if he "d[id] not file an appeal, file[d] an untimely appeal, or affirmatively withdr[e]w from appellate review," he had "one calendar year after the conclusion of the 90-day period following the receipt of this letter in which to file an application for review to The Judge Advocate General of the Air Force under Article 69, [UCMJ, 10 U.S.C. § 869 (2019 *MCM*)]."

**2. Law**

"The [C]ourts of [C]riminal [A]ppeals are courts of limited jurisdiction, defined entirely by statute." *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015) (citation omitted). The scope of an appellate court's authority, like other questions of jurisdiction, is a legal question we review de novo. *See United States v. English*, 79 M.J. 116, 121 (C.A.A.F. 2019) (citations omitted); *United States v. Hale*, 78 M.J. 268, 270 (C.A.A.F. 2019) (citation omitted). "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction." *United States v. LaBella*, 75 M.J. 52, 53 (C.A.A.F. 2015) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Statutory interpretation is also a question of law we review de novo. *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017) (citation omitted). "Unless the text of a statute is ambiguous, 'the plain language of a statute will control unless it leads to an absurd result.'" *United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013) (quoting *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012)) (additional citation omitted). "Whether the statutory language is ambiguous is determined 'by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Article 66(b)(3), UCMJ, provides a Court of Criminal Appeals (CCA) shall have jurisdiction over a court-martial in which the judgment entered includes death, a punitive discharge, or confinement for two years or more—a provision known as "automatic review" by the CCA. 10 U.S.C. § 866(b)(3). Prior to 23 December 2022, a servicemember convicted by a court-martial whose sentence included confinement for more than six months and less than two years, with no punitive discharge, had the right to apply for review by the CCA within a certain period of time[5]—a provision known as a "direct appeal." 10 U.S.C. § 866(b)(1)(A) (2019 *MCM*). Cases in which the sentence did not qualify for either automatic review or a direct appeal, or in which a convicted servicemember elected not to exercise the right to a direct appeal or withdrew from appellate review, were reviewed by a designated attorney pursuant to Article 65(d), UCMJ (2019 *MCM*).

However, prior to 23 December 2022, a servicemember whose case was reviewed by an attorney pursuant to Article 65(d), UCMJ (2019 *MCM*), still had

---

[5] Specifically, the servicemember had until the later of "the end of the 90-day period beginning on the date the accused is provided notice of appellate rights under [Article 65(c), UCMJ, 10 U.S.C. § 865(c) (2019 *MCM*)]," or "the date set by the [CCA] by rule or order," 10 U.S.C. § 866(c)(1) (2019 *MCM*).

a potential route for review by the CCA. Article 69, UCMJ, 10 U.S.C. § 869 (2019 *MCM*), provided that such a servicemember could apply for review by The Judge Advocate General (TJAG). Such an application would be timely if submitted within one year after completion of the Article 65(d), UCMJ, review. 10 U.S.C. § 869(b) (2019 *MCM*). After TJAG completed the Article 69(c), UCMJ (2019 *MCM*), review, the servicemember could then apply to the CCA for review, and the CCA had the discretion to grant such review if (1) "the application demonstrate[d] a substantial basis for concluding that the action on review under [Article 69(c), UCMJ,] constituted prejudicial error," and (2) the servicemember filed the application within 60 days of notification of TJAG's decision or 60 days after notification was deposited in the United States mail, whichever was earlier. 10 U.S.C. § 869(d)(2)(A)–(B) (2019 *MCM*); *see also* 10 U.S.C. § 866(b)(1)(D) (2019 *MCM*) (granting the CCA jurisdiction to review such cases). For matters reviewed by the CCA pursuant to Article 69(d), UCMJ, the CCA could "take action only with respect to matters of law." 10 U.S.C. § 869(e) (2019 *MCM*).

The National Defense Authorization Act for Fiscal Year 2023 (FY23 NDAA), Pub. L. No. 117-263, § 544(b)(1)(A), 136 Stat. 2395, 2582 (23 Dec. 2022), while retaining the same criteria for automatic CCA review, significantly expanded eligibility for direct appeals of general and special court-martial convictions under Article 66, UCMJ. In its new form, Article 66(b)(1)(A), UCMJ, provides a CCA has jurisdiction over "a timely appeal from the judgment of a court-martial, entered into the record under [Article 60c(a), UCMJ, 10 U.S.C. § 860c(a)], that includes a finding of guilty." 10 U.S.C. § 866(b)(1)(A). Article 60c(a), UCMJ, provides that, "[i]n accordance with rules prescribed by the President, in a general or special court-martial, the military judge shall enter into the record of trial the judgment of the court." 10 U.S.C. § 860c(a)(1). In effect, the FY23 NDAA made every general or special court-martial conviction subject to review by the CCA, regardless of sentence, either automatically or upon timely appeal by the convicted servicemember. As with direct appeals prior to the enactment of the FY23 NDAA, the expanded direct appeals are timely if submitted to the CCA before the later of "the end of the 90-day period beginning on the date the accused is provided notice of appellate rights under [Article 65(c), UCMJ, 10 U.S.C. § 865(c)]," or "the date set by the [CCA] by rule or order." 10 U.S.C. § 866(c)(1)(A)–(B). As before the FY23 NDAA, if a convicted servicemember entitled to a direct appeal chooses not to exercise that right, a designated attorney will review the case pursuant to Article 65(d), UCMJ, 10 U.S.C. § 865(d).

The FY23 NDAA also significantly revised Article 69, UCMJ. In particular, Article 69(d), UCMJ, 10 U.S.C. § 869(d), now provides a convicted servicemember the right to seek CCA review of action by the TJAG pursuant to Article 69(c)(1), UCMJ, with respect to cases previously reviewed under Article 64,

UCMJ, 10 U.S.C. § 864—which specifically applies only to summary courts-martial. A servicemember convicted by a general or special court-martial who does not exercise the right to a direct appeal, and whose case is reviewed by a designated attorney pursuant to Article 65(d), UCMJ, may still apply for review by TJAG under Article 69, UCMJ; however, in such cases TJAG's review is limited to the issue of whether the servicemember made an invalid waiver or withdrawal of the right to a direct appeal. 10 U.S.C. § 869(c)(2). Effective 23 December 2022, TJAG no longer performs a substantive review of general or special courts-martial under Article 69, UCMJ. Instead, if TJAG finds an invalid waiver or withdrawal, the remedy is to send the case to the CCA for review. *Id.* The current version of Article 69, UCMJ, provides no right for a servicemember convicted by a general or special court-martial to appeal TJAG's determination, nor to directly apply for review by the CCA.[6]

When a statute has no specified effective date, absent clear direction by Congress to the contrary, it takes effect on the date of its enactment. *Johnson v. United States*, 529 U.S. 694, 702 (2000) (citation omitted). The FY23 NDAA provided that the changes to Articles 66 and 69, UCMJ, "shall not apply to [ ] (1) any matter that was submitted before the date of enactment of this Act to a [CCA]; or (2) any matter that was submitted before the date of the enactment of this Act to a Judge Advocate General under [Article 69, UCMJ (2019 *MCM*)]." 136 Stat. 2395 § 544(d).

### 3. Analysis

The record before us indicates we have jurisdiction over Appellant's appeal. As of 23 December 2022, Article 66(b)(1)(A), UCMJ, gives this court jurisdiction over a timely appeal from the judgment of a special court-martial entered into the record pursuant to Article 60c(a), UCMJ, that includes a finding of guilty. Such appeals are timely if filed within 90 days of the date an appellant was notified of appellate rights under Article 66(c)(1)(A), UCMJ. In this case, the military judge entered Appellant's conviction by a special court-martial into the record on 4 November 2021. No earlier than 6 June 2023, Appellant was provided notice of his right to file a direct appeal when the memorandum from 19 AF/JA was mailed to Appellant. *See* 10 U.S.C. § 865(c)(1). This court received Appellant's notice of appeal on 11 August 2023, well within 90 days. In addition, Appellant's case did not fall into either category that Congress specifically excepted from the application of the expanded direct appeal rights under Article 66, UCMJ: as of 23 December 2022, Appellant's case had not previously been submitted to this court, and he had not submitted his case for

---

[6] A servicemember convicted by a *summary* court-martial whose case was reviewed by TJAG under Article 69, UCMJ, may seek discretionary review by the CCA. Article 69(d), UCMJ, 10 U.S.C. § 869(d).

review by TJAG pursuant to Article 69, UCMJ (2019 *MCM*)—although he was still within the one-year period of the completion of the Article 65, UCMJ, review on 6 January 2022 in which to apply for such a review by TJAG. *See* 136 Stat. 2395 § 544(d); 10 U.S.C. § 869(b) (2019 *MCM*). Accordingly, Appellant was eligible to appeal the judgment of his court-martial to this court, and he did so within the required timeframe.

However, the Government has moved this court to dismiss the appeal, contending we lack jurisdiction to review Appellant's appeal under Article 66(b)(1)(A), UCMJ.[7] We address the most significant aspects of the Government's argument below.

Essentially, the Government contends Appellant's conviction and sentence became "final" for purposes of appellate review when the Article 65, UCMJ, review was completed on 6 January 2022. Therefore, the Government argues, for this court to review Appellant's case would be to inappropriately give retroactive effect to the FY23 NDAA expansion of direct review jurisdiction. The Government points to Article 57, UCMJ, 10 U.S.C. § 857, entitled "Effective date of sentences," which was unchanged by the FY23 NDAA and addresses when the various forms of punishment adjudged by a court-martial shall take effect. Article 57(a)(5), UCMJ, entitled "Completion of appellate review," provides that the part of a sentence extending to death or a punitive discharge may be executed "after completion of appellate review." Article 57(c)(1)(A), UCMJ, provides that in those cases that are reviewed by a designated attorney pursuant to Article 65, UCMJ, "[a]ppellate review is complete under this section when" the Article 65, UCMJ, review is complete. Therefore, the Government reasons, Appellant's conviction was final for purposes of appellate review on 6 January 2022, and not subject to further appeal based on the subsequent expansion of direct appeal rights and jurisdiction in the FY23 NDAA.

We are not persuaded. In our view, the better interpretation of Congress's intent is that the FY23 NDAA applies to convicted servicemembers who had not exhausted their appellate rights under the prior version of Article 69, UCMJ (2019 *MCM*), as of the effective date on the FY23 NDAA changes on 23 December 2022, except for those specifically excepted from its application by

---

[7] The Government "acknowledges this [c]ourt has denied similar motions in other cases" that this court has yet to decide on the substance of the appellants' claims. *Cf. United States v. Hirst*, ___ M.J. ___, NMCCA No. 202300208, 2024 CCA LEXIS 134, at \*20 (N.M. Ct. Crim. App. 9 Apr. 2024) (published order) ("adopt[ing] the well-reasoned Order" issued by this court in *United States v. Cooley*, ACM No. 40376). However, the Government contends subsequent changes to the Rules for Courts-Martial "support [its] position that there is no jurisdiction in this case and justify this [c]ourt taking a closer look at this issue."

the language Congress included in the FY23 NDAA itself. As we have described, as of 23 December 2022 Appellant had not exhausted his Article 69, UCMJ (2019 *MCM*), rights, nor had Appellant submitted his case for CCA or TJAG review. Because the FY23 NDAA did not exclude Appellant, consistent with the canon of statutory construction *expressio unius est exclusio alterius*,[8] we conclude Congress intended to include him.

Several other considerations reinforce our conclusion. First, to accept the Government's argument would require us to conclude Congress intended to particularly disadvantage servicemembers situated similarly to Appellant. Significantly, as of 23 December 2022, the prior statutory arrangement applicable to cases such as Appellant's no longer exists. As described above, TJAG no longer substantively reviews general or special courts-martial under Article 69, UCMJ, the current version of which provides no right for a convicted servicemember to request CCA review after TJAG review. With this understanding, it becomes apparent the Government's position would result in servicemembers situated similarly to Appellant having fewer appellate rights than either servicemembers subject to the "new," post-December 2022 system, or servicemembers subject to the "old," pre-December 2022 system. Convicted servicemembers under the "new" system would have the right to appeal any general or special court-martial conviction to the CCA under Article 66, UCMJ. Convicted servicemembers who were sentenced to six months of confinement or less and no punitive discharge, and whose rights to seek TJAG and CCA review had run their full course prior to 23 December 2022, received the less robust protections of the "old" system. However, according to the Government, servicemembers situated similarly to Appellant would have had their right to seek TJAG and potentially CCA review under the "old" system curtailed without being afforded the right to a direct appeal under the "new" system.

We find the Government's argument at odds with the apparent general purpose of the changes to CCA jurisdiction enacted in the FY23 NDAA. Congress expanded the availability of direct appeals from a relatively narrow class of convicted servicemembers—those who received more than six months but less than two years of confinement and received no punitive discharge—to the much broader class consisting of every servicemember convicted by a general or special court-martial whose case is not subject to automatic CCA review. Put another way, Congress expanded the rights of a significant class of convicted servicemembers to access CCA review from a limited and delayed ability to seek discretionary CCA review of only legal errors via Articles 65 and 69, UCMJ (2019 *MCM*), to a more robust and direct appeal under the CCA's full

---

[8] "[T]o express or include one thing implies the exclusion of the other." *United States v. McPherson*, 81 M.J. 372, 386 (C.A.A.F. 2021).

authority to review legal and factual sufficiency under the current Article 66(d), UCMJ. To be clear, for purposes of our analysis here, we do not question whether Congress *could* implement such a scheme as the Government envisions if Congress chose to do so. The point is that we are not persuaded Congress actually intended such a result given the language it included in the FY23 NDAA. *See* 136 Stat. 2395 § 544(d).

In addition, we find the Government reads too much significance into the Article 57(c)(1), UCMJ, definition of "completion of appellate review." We note the evident purpose of this provision is to define the term "completion of appellate review *under this section*." That is, the definition specifically applies to how that term is used in Article 57(a)(5), UCMJ, to explain when the Government may proceed with executing a punitive discharge or sentence of death.[9] In other words, read together, Article 57(a)(5) and (c)(1)(A), UCMJ, explain that the Government may proceed with executing, for example, a bad-conduct or dishonorable discharge once the Article 65, UCMJ, review is complete. Article 57(c)(1), UCMJ, does not purport to be the final word on a convicted servicemember's right to post-trial and appellate review. It was not intended to foreclose further review, as the prior version of Article 69, UCMJ (2019 *MCM*), described above, provided for TJAG and potentially CCA review and relief as to findings or sentence after the Article 65, UCMJ (2019 *MCM*), review was complete.

To be fair, Article 57(c)(2), UCMJ, provides "[t]he completion of appellate review shall constitute a final judgment as to the legality of the proceedings." However, the potential for further post-trial or appellate relief pursuant to Article 69, UCMJ (2019 *MCM*), for a general or special court-martial conviction following Article 65, UCMJ (2019 *MCM*), review, notwithstanding Article 57, UCMJ (2019 *MCM*), begs the question of what "final judgment" means in this context. Certainly, it did not preclude further TJAG or CCA review. In our view, the completion of Article 65(d), UCMJ (2019 *MCM*), review, which concludes the final stage of *mandatory* post-trial review for those courts-martial to which it applied, signifies—before and after 23 December 2022—the point in time at which the Government can move forward with executing a sentence to death or a punitive discharge under Article 57, UCMJ. However, such sentences evidently were not intended to be impervious to subsequent review, including by this court. Accordingly, the Article 57(c)(1)(A), UCMJ, definition of "completion of appellate review" has little effect on our interpretation of Appellant's right to a direct appeal under the FY23 NDAA.

---

[9] Sentences to death or a dismissal are further subject to presidential or secretarial approval as provided in Article 57(a)(1)(3) and (4), UCMJ, respectively.

The Government's citations to Article 76, UCMJ, 10 U.S.C. § 876, and Rule for Courts-Martial (R.C.M.) 1209 are unpersuasive for similar reasons. Article 76, UCMJ, which also remained unchanged by the FY23 NDAA, states:

> The appellate review of records of trial provided by [the UCMJ], the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by [the UCMJ], and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by [the UCMJ], are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon a petition for a new trial as provided in [Article 73, UCMJ, 10 U.S.C. § 873,] and to action by the Secretary concerned as provided in [Article 74, UCMJ, 10 U.S.C. § 874,] and the authority of the President.

R.C.M. 1209 has also remained unchanged. R.C.M. 1209(a)(1) essentially restates the content of Article 57(c)(1), UCMJ, specifically with regard to when a general or special court-martial conviction becomes "final." R.C.M. 1209(b) essentially reiterates Article 76, UCMJ, quoted above. We conclude neither R.C.M. 1209 nor Article 76, UCMJ, obstruct Appellant's direct appeal. Whatever significance completion of Article 65(d), UCMJ, judge advocate review may carry with regard to implementing the sentence of a court-martial, the completion of such a review manifestly did not extinguish a convicted servicemember's right to seek further post-trial review and substantive relief from TJAG and the CCA in light of the express congressional provision for seeking such review in accordance with the pre-23 December 2022 version of Article 69, UCMJ (2019 *MCM*)—Article 76 and R.C.M. 1209 notwithstanding. Accordingly, in our judgment, the most salient consideration is that Appellant's case was not "final" in the sense of having exhausted his access to the CCA, which is what Congress has expanded in the FY23 NDAA.

With the understanding that Appellant's case was not "final" or "complete" once the Article 65, UCMJ, judge advocate review was done, in the sense that he had not exhausted his right to seek CCA review, the Government's arguments regarding presumptions against giving legislation retroactive effect and related contentions lose their force. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994); *QUALCOMM Inc. v. FCC*, 181 F.3d 1370, 1380 n.8 (D.C. Cir. 1999). As applied to Appellant, the FY23 NDAA is better understood as Congress expanding an existing path to appellate review, rather than reopening a completed case. However, three additional points warrant comment.

The Government cites certain federal court opinions to suggest the review previously provided for under Article 69, UCMJ (2019 *MCM*), is more akin to a collateral proceeding for coram nobis relief than to direct appellate review. *See McKinney v. White*, 291 F.3d 851, 855 (D.C. Cir. 2002); *Curci v. United States*, 577 F.2d 815, 818 (2d Cir. 1978). We find such comparisons of very limited value here. To begin with, neither case involved an issue comparable to the one before us now, determining the effect of the FY23 NDAA. Moreover, in each case, the court was referring specifically to the substance of TJAG's review under Article 69, UCMJ, which by its nature is not review by an appellate court. *McKinney*, 291 F.3d at 855; *Curci*, 577 F.2d at 818. Moreover, *Curci*, which *McKinney* cites to, was issued at a time when Article 69, UCMJ, did not provide appellants an independent right to seek discretionary review by the service court of appeals following TJAG review.[10]

The Government suggests that allowing Appellant to seek CCA review after the "final" Article 65, UCMJ, judge advocate review would create constitutional concerns implicating the separation of powers, citing *Plaut v. Spendthrift Farms*, 514 U.S. 211 (1995). In *Plaut*, the Court held Congress exceeded its authority through retroactive legislation that would have required Article III[11] courts to reopen prior judgments. *Id.* at 218–27. However, as we have described above, Appellant's case was not "final" in the relevant sense. Furthermore, as the Government itself acknowledges, *Plaut* involved the relationship between Congress and the federal judiciary, two separate but coequal branches of the federal government. In contrast, the court-martial post-trial and

---

[10] We find more apt another case cited by the Government, although not in the way the Government suggests. One of the issues in *MacLean v. United States* was whether the plaintiff's writ petitions to the United States Court of Appeals for the Armed Forces (CAAF) for coram nobis relief delayed the accrual of his cause of action in the United States Court of Federal Claims. 67 Fed. Cl. 14, 20–22 (2005). The court found they did not, explaining in part:

> [Articles 59–76, UCMJ,] 10 U.S.C. §§ 859–876[,] provide the administrative remedies for directly challenging a court-martial conviction resulting in a punitive military discharge, including review by the [CCA], the CAAF, the Supreme Court, and the Judge Advocate General. *See* 10 U.S.C. § 801 et. Seq. This statutory framework provides for finality in the court-martial process, which is not affected by the subsequent filing of a writ of error coram nobis.

*Id.* at 21 (citation omitted). Thus, the court recognized the UCMJ's statutory provisions for post-trial and appellate review—including Article 69, UCMJ, review—operate *together* to create a "framework" that brings "finality" to a court-martial, which the court expressly distinguished from coram nobis relief.

[11] U.S. CONST. Art. III.

appellate processes are statutory creations of Congress; thus, the same constitutional concerns are simply not at issue. Moreover, courts have long recognized Congress is entitled to "the highest deference in ordering military affairs," including military justice. *Loving v. United States*, 517 U.S. 748, 768 (1996); *see also Solorio v. United States*, 483 U.S. 435, 447 (U.S. 1987) ("[J]udicial deference . . . is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged." (Internal quotation marks and citations omitted).). In addition, the Government fails to explain why, by its reasoning, the previous version of Article 69, UCMJ (2019 *MCM*), did not already offend the constitutional separation of powers, given that a CCA[12] could potentially modify the "final" results of a court-martial after Article 65, UCMJ, review was complete.

Finally, the Government notes Article 65(d)(2)(A), UCMJ, which was unchanged by the FY23 NDAA, continues to require Article 65(d), UCMJ, review for "each general and special court-martial that is not eligible for direct appeal under paragraph (1) or (3) of [Article 66(b), UCMJ]."[13] This provision is distinct from Article 65(d)(3), UCMJ, which provides for Article 65(d), UCMJ, review of cases in which the accused waived or withdrew from the right to appeal or failed to make a timely direct appeal. The Government contends the existence of Article 65(d)(2)(A), UCMJ, indicates Congress intended there to exist some category of general and special court-martial convictions where the servicemember had not waived or withdrawn or failed to make a timely direct appeal, and yet was also "not eligible for direct appeal." We understand the Government's reasoning. Given our interpretation of the scope of eligibility for direct appeals as described above, it is difficult to identify a hypothetical general or special court-martial conviction in which none of the following would apply: the servicemember either (a) was eligible for direct appeal (or automatic CCA review); (b) had waived or withdrawn from appellate review or failed to make a timely appeal; or (c) had already undergone an Article 65(d), UCMJ, review. Yet, for the reasons stated above, we remain convinced Appellant is entitled to a direct appeal. It is possible Congress left Article 65(d)(2)(A), UCMJ, unchanged out of concern that there might be an unforeseen scenario in which it

---

[12] Or, upon further review, the CAAF. *See* Article 67(a)(2), (3), UCMJ, 10 U.S.C. § 867(a)(2), (3) (2019 *MCM*).

[13] Although Article 65(d)(2)(A), UCMJ, uses the term "direct appeal," it refers to both subsections (1) and (3) of Article 66(b), UCMJ. Accordingly, Article 65(d)(2)(A), UCMJ, includes not only "direct appeals" of general and special courts-martial that include a finding of guilty (as that term has been used throughout this opinion), but also courts-martial subject to automatic review by a CCA based on a sentence of death, punitive discharge, or confinement for two years or more.

believed Article 65(d), UCMJ, review at a minimum ought to apply. Congress may have simply not felt the need to modify the provision, despite it being made redundant by other UCMJ modifications. In any event, we find the mere existence of a vestigial statutory category that has potentially become empty due to other changes in the law does not compel us to deny Appellant the expanded right to direct appeal where we further find the language of the FY23 NDAA made him eligible.

Accordingly, we conclude Appellant was eligible to appeal under Article 66(b)(1)(A), UCMJ, and this court has jurisdiction to decide his appeal.

## B. Firearm Prohibition

### 1. Additional Background

The STR and EoJ in the instant case—signed by the military judge in accordance with R.C.M. 1101 and R.C.M. 1111, respectively—have attached indorsements from the convening authority's staff judge advocate which recite, *inter alia*, "[t]he following criminal indexing is required . . . Firearm Prohibition Triggered Under 18 U.S.C. § 922: Yes . . . ." The indorsements do not specify which subsections of 18 U.S.C. § 922 trigger the firearm prohibition in Appellant's case.

### 2. Law

We review questions of jurisdiction de novo. *Hale*, 78 M.J. at 270 (citation omitted). "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction." *LaBella*, 75 M.J. at 53 (C.A.A.F. 2015) (citation omitted). Statutory interpretation is also a question of law this court reviews de novo. *United States v. Buford*, 77 M.J. 562, 564 (A.F. Ct. Crim. App. 2017) (citation omitted). Similarly, "[p]roper completion of post-trial processing is a question of law this court reviews de novo." *United States v. Valentin-Andino*, 83 M.J. 537, 541 (A.F. Ct. Crim. App. 2023) (citation omitted).

"The [CCAs] are courts of limited jurisdiction, defined entirely by statute." *Arness*, 74 M.J. at 442 (citation omitted). This court's authority to review the results of Appellant's court-martial is governed by Article 66, UCMJ, 10 U.S.C. § 866. Article 66(d), UCMJ, provides that a CCA "may act only with respect to the findings and sentence as entered into the record under [Article 60c, UCMJ, 10 U.S.C. § 860c]." 10 U.S.C. § 866(d).

18 U.S.C. § 922(g) provides, in part:

> It shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or

> ammunition which has been shipped or transported in interstate
> or foreign commerce.

In *United States v. Lepore*, this court held it lacked authority under a previous version of Article 66, UCMJ (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)), to direct correction of an 18 U.S.C. § 922(g) firearm prohibition annotated on a court-martial promulgating order. 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc).

### 3. Analysis

Citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and several federal circuit decisions, Appellant contends 18 U.S.C. § 922(g) is unconstitutional as applied to his case. *See United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023); *Range v. AG United States*, 69 F.4th 96 (3d Cir. 2023); *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023). Appellant requests this court hold the 18 U.S.C. § 922(g) firearm prohibition "unconstitutional as applied to him and order correction of the STR and E[o]J to indicate that no firearm prohibition applies in his case."

This court's opinion in *Lepore* would appear to control resolution of the issue. There we explained that Article 66(c), UCMJ (2016 *MCM*), "specifically limit[ed] our authority such that we 'may only act with respect to the findings and sentence' of a court-martial 'as approved by the convening authority.'" *Lepore*, 81 M.J. at 762 (quoting 10 U.S.C. § 866(c)). We held that because the allegedly erroneous 18 U.S.C. § 922(g) firearm prohibition annotation on the promulgating order in that case was a collateral consequence of the conviction, and "not a finding or part of the sentence, nor [a matter] subject to approval by the convening authority," it was beyond our statutory authority to correct. *Id.* at 763 (citations omitted). *Lepore* was decided under a previous version of Article 66(c), UCMJ (2016 *MCM*), and the relevant restrictive language has since moved to Article 66(d), UCMJ—in a slightly modified form accounting for the advent of entry of judgment in accordance with Article 60c, UCMJ. However, the limitation that the CCA "may act only with respect to the findings and sentence" is unchanged. 10 U.S.C. § 866(d). The firearms prohibition remains a collateral consequence of the conviction, rather than an element of the findings or sentence, and is therefore beyond our authority to review.

Appellant contends the decision without published opinion of the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Lemire*, 82 M.J. 263 (C.A.A.F. 2022) (mem.), contravenes *Lepore*, which Appellant urges us to overrule. This court has previously addressed similar arguments in recent cases, notably in *United States v. Fernandez*, No. ACM 40290 (f rev), 2024 CCA LEXIS 7, at *26–32 (A.F. Ct. Crim. App. 9 Jan. 2024), *rev. granted*, ___ M.J. ___, 2024 CAAF LEXIS 239 (26 Apr. 2024 C.A.A.F.) (unpub.

op.). *See also United States v. Jackson*, No. ACM 40310, 2024 CCA LEXIS 9, at *17–18 (A.F. Ct. Crim. App. 11 Jan. 2024) (unpub. op.) (denying relief); *United States v. Saul*, No. ACM 40341, 2023 CCA LEXIS 546, at *2 (A.F. Ct. Crim. App. 29 Dec. 2023) (unpub. op.) (same); *United States v. Casillas*, No. ACM 40302, 2023 CCA LEXIS 527, at *2 (A.F. Ct. Crim. App. 29 Dec. 2023) (unpub. op.) (same). For the reasons stated in *Fernandez*, we are not persuaded the CAAF's decision in *Lemire* gives us cause to revisit or overrule *Lepore*. Accordingly, we find *Lepore* controlling and we do not address the substance of Appellant's argument. *See Fernandez*, unpub. op. at *30–32.[14]

### III. CONCLUSION

The Government's motion for leave to file a motion to dismiss is **GRANTED**. The Government's motion to dismiss is **DENIED**. The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[14] We recognize that *Fernandez* is currently pending review at the CAAF on the question of whether the CAAF itself has jurisdiction to direct modification of an 18 U.S.C. § 922 firearm prohibition noted on a staff judge advocate's indorsement to the EoJ. *See United States v. Fernandez*, ___ M.J. ___, No. 24-0101/AF, 2024 CAAF LEXIS 239 (C.A.A.F. 26 Apr. 2024) (order).